C. Kenneth STILES, Plaintiff,

v.

AMERICAN GENERAL LIFE
INSURANCE COMPANY,
Defendant.

No. 3:96–3241–19.

United States District Court,
D. South Carolina,
Columbia Division.

March 3, 1998.

Herbert W. Louthian, Louthian and Louthian, Columbia, SC, for Plaintiff.

Scott Timothy Justice, Janis Wilson Johnson, Haynsworth, Baldwin, Johnson & Greaves, P.A., of Columbia, SC, for Defendant.

TO THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF THE SUPREME COURT OF SOUTH CAROLINA:

*CERTIFICATION OF QUESTION
OF LAW PURSUANT TO
S.C.A.C.R. 228*

SHEDD, District Judge.

Pursuant to Rule 228 of the South Carolina Appellate Court Rules, the undersigned United States District Judge respectfully certifies the following question of law to the Supreme Court of South Carolina:

> **May an employee who is employed under an employment contract which provides that either party may terminate the agreement "for any reason" with 30–days' notice—*i.e.*, an at-will contract with a notice provision—maintain a tort action for wrongful discharge in violation of public policy under *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985)?**

The answer to this question, which is potentially dispositive of this action, does not appear to be directly controlled by any precedent of the Supreme Court of South Carolina.

## I. NATURE OF THE CONTROVERSY

In 1985, plaintiff signed two employment agreements with defendant: the "Flexi–Master Contract" and the "General Agent Contract." Both of these agreements, which became effective on January 1, 1986, contained termination provisions which, *inter alia*, allowed either party to terminate "for any reason" by giving 30–days' written notice to the other party. On October 14, 1993, defendant informed plaintiff that it was terminating these agreements effective November 14, 1993.

Plaintiff thereafter brought this action asserting causes of action for breach of contract and wrongful discharge in violation of public policy based on defendant's termination of the agreements. Following comple-

tion of pretrial discovery, defendant moved for summary judgment on both causes of action. *See* Fed.R.Civ.P. 56. In a separate order, the Court granted the motion as to the breach of contract claim.[1] The Court reserved ruling on the motion as to the wrongful discharge claim in order to certify the question of law set forth above.

Plaintiff's wrongful discharge claim, which he has brought pursuant to *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985) and its progeny, is based on his allegation that defendant terminated the agreements in a retaliatory manner because he had protested and reported what he contends to be an illegal practice by defendant. Defendant denies this contention, both as to the alleged retaliatory motivation of the termination and the alleged illegality of its practice, and asserts instead that it terminated the agreements for proper reasons. For the purpose of this Order only—except as the proposed certified question bears on the issue—the Court assumes that plaintiff has properly stated a claim for wrongful discharge under *Ludwick*. *See particularly Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995) (declining to decide whether a retaliatory discharge for reporting and testifying about radioactive con-

tamination and unsafe working conditions at a nuclear facility is actionable under *Ludwick*).[2]

## II. THE WRONGFUL DISCHARGE CLAIM INVOLVES A CONTROLLING QUESTION OF LAW WHICH IS UNSETTLED

Under South Carolina law "[t]he employer-employee relationship is contractual," *White v. Roche Biomedical Labs., Inc.*, 807 F.Supp. 1212, 1220 (D.S.C.1992) (citations omitted), *aff'd by unpublished opinion*, 998 F.2d 1011, 1993 WL 243709 (4th Cir. 1993), and as a general matter, " '[a]n employment contract may be either for a stated term or at will.' " *Young*, 333 S.E.2d at 568 (citation omitted).[3] A contract for a stated term of employment " 'may only be terminated before the end of the term by just cause,' " *id.* (citation omitted), and the termination of a contract for a stated term without just cause gives rise to a cause of action for breach of contract.[4] *See Shivers v. John H. Harland Company*, 310 S.C. 217, 423 S.E.2d 105, 107 (1992).[5] However, a contract for at-will employment may, with certain exceptions, be terminated "at any time, ... 'for any reason or for no reason at all,' with or

1. According to plaintiff, a representative of defendant informed him (and others) in December 1985, before they signed these agreements, that the use of the term "any reason" in the termination provision of these agreements did not mean that defendant could terminate the agreements for "no reason" but, instead, meant that defendant could only terminate the agreements for a "valid reason." Plaintiff contended that the alleged oral assurances concerning the "any reason" language make the agreements other than at-will. Based on the record presented, the Court found that the agreements are unambiguous, and therefore rejected plaintiff's attempt to contradict the plain language by use of parol evidence. *Young v. McKelvey*, 286 S.C. 119, 333 S.E.2d 566, 567 (1985). The Court further found that defendant complied with the terms of the agreements in terminating plaintiff.

2. The Court expresses no opinion concerning the merits *vel non* of the wrongful discharge claim. Thus, open questions surrounding this claim include (1) whether a retaliatory discharge for reporting conduct which the employee perceives, correctly or incorrectly, to be illegal is actionable under *Ludwick*, and (2) whether the evidence ultimately is sufficient for plaintiff to proceed to

the jury on a wrongful discharge claim. Those matters need to be decided, if at all, only after the threshold question which is the subject of this Order is answered. The Court notes that the first of these matters is a question of law upon which the state supreme court may choose to elaborate.

3. "Employment at will results from agreements which have 'no additional expression of duration.' " *Prescott v. Farmers Tele. Co-op.*, 328 S.C. 379, 491 S.E.2d 698, 701 (1997).

4. However, " '[e]ven though one's services are engaged by another for a definite term, the employer may discharge him for good cause during the term of the employment without incurring liability for breach of contract.' " *Freeman v. King Pontiac Co.*, 236 S.C. 335, 114 S.E.2d 478, 483 (1960) (citation omitted).

5. The measure of damages in such a case "generally is the wages for the unexpired portion of the term." *Shivers*, 423 S.E.2d at 107. "This measure of damages allows an employee to receive the benefit of the bargain by putting him in as good a position as he would have been had the contract been performed." *Id.*

without cause ... [and] [t]he termination of employment at will does not normally give rise to a cause of action for breach of contract." *White,* 807 F.Supp. at 1215 (citations omitted).

■ As noted, the agreements in this case contain a 30-day notice provision which may be triggered "for any reason." In *Shivers,* the state supreme court discussed the nature of a notice provision in an employment contract:

> Under South Carolina law, an employment contract containing a notice provision is a contract for a definite term. An employment contract containing a notice provision does not provide for a specific termination date, but is continually in force until notice is given. Once notice is given, the employment contract assumes a definite term, this being the last day of the notice period.

423 S.E.2d at 107 (citations omitted). The *Shivers* court further explained that once the notice provision is triggered, the employer may terminate the employee only for just cause. *Id.* at 108. The notice provision in an employment contract thus provides the employee with "'a continual right to employment'" until the specified period of time has elapsed after notice was given unless there exists just cause for an earlier termination. *Young,* 333 S.E.2d at 568 (citation omitted). An employer who discharges an employee without just cause in contravention of the notice provision is subject to an action for breach of contract in which the employer may recover damages equal to the amount of wages that he would have been paid over the specified notice period. *Shivers,* 423 S.E.2d at 107–08.

In this case, the parties expressly contracted that either party may terminate the agreements "for any reason"—*i.e.,* at will—with thirty-days' notice to the other party. "Thus, the employment relationship between the parties was an at-will relationship with a 30 day notice requirement for termination."

*Moshtaghi v. The Citadel,* 314 S.C. 316, 443 S.E.2d 915, 919 (1994).[6] Defendant therefore had the right to terminate the agreements at will, but absent just cause for his termination, plaintiff had the right to retain his employment for a period of thirty days after defendant notified him of its decision to terminate. The Court has previously concluded as a matter of law that defendant did not breach the agreements by terminating plaintiff. In light of that ruling, plaintiff's sole remaining potential remedy arises under *Ludwick.*

*Ludwick* involved a claim by an at-will employee that her employer terminated her employment because she refused its instruction not to comply with a lawful subpoena. The state supreme court set forth the sole issue presented in that case as being "whether South Carolina shall recognize a cause of action for discharge of an at-will employee, where the discharge constitutes a violation of public policy." 337 S.E.2d at 214. The supreme court, after reviewing the doctrine of employment at will somewhat critically, answered this question in the affirmative:

> The doctrine of termination at will remains the law of this state. However, today we recognize an exception.

> Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises.

> ...

> We hold that the public policy exception is invoked where an employer requires an at-will employee, as a condition of retaining employment, to violate the law. To hold otherwise would sanction defiance of the legal process legislated by the General Assembly.

> In a nation of laws the mere encouragement that one violate the law is unsavory;

---

6. Plaintiff agrees, albeit for another reason, that the agreements were not at-will and, in fact, rests his breach of contract claim on that very contention. *See Plaintiff's Memo. In Opp. To Def.'s Mot. For Sum. Judg.,* at 12–13 ("Mr. Stiles' career agency was terminable, not at-will, but only pursuant to the terms of the 1986 contracts"). De-

fendant likewise agrees that the agreements were not truly at-will. *See Defendant's Feb. 6, 1998 Brief,* at 3 n. 1 ("Defendant ... concedes that the 30-day notice provisions create contracts for a definite term that have to be recognized and adhered to in a termination").

the threat of retaliation for refusing to do so is intolerable and impermissible.

*Id.* at 216.

Since 1985, the state supreme court has considered and addressed the *Ludwick* doctrine in four published opinions,[7] and the state court of appeals has likewise done so in four additional published opinions.[8] Except for *Moshtaghi*, in each of those cases, as in *Ludwick*, the courts were presented with a *Ludwick* claim involving an *at-will* employment contract. There is no published South Carolina authority which holds that *Ludwick* is applicable in a case involving an employee who has a fixed-term employment contract.[9] Because the agreements in this case contain both an at-will component and a fixed-term component, the Court is presented with the novel issue of whether *Ludwick* is applicable.[10] As the Court explains below, compelling arguments exist on both sides of this issue.

The Supreme Court of South Carolina considers the state to be "progressive" with respect to protection of employees. *See Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452, 455 (1987). In light of the *Ludwick* court's admonition that the threat of retaliation for an employee's refusal to violate the law is "intolerable," 337 S.E.2d at 216, a strong argument can be made in favor of the extension of *Ludwick* to all employees. As plaintiff states: "To hold otherwise would allow employers to avoid liability for a public policy tort simply by giving an otherwise at-will employee a written contract requiring a notice period, even a one (1) hour period, before termination. Such a result would clearly contravene the intent behind recognition of this tort." *Plaintiff's Feb. 6, 1998 Brief,* at 2. However, despite the obvious force of this argument, the issue is not so easily resolved.

Unquestionably, one purpose underlying *Ludwick* is the vindication of the state's in-

---

**7.** *See Garner, supra; Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 422 S.E.2d 91 (1992); *Dockins v. Ingles Mkts., Inc.*, 306 S.C. 496, 413 S.E.2d 18 (1992); *Epps v. Clarendon County*, 304 S.C. 424, 405 S.E.2d 386 (1991).

**8.** *See Keiger v. Citgo, Coastal Petro., Inc.*, 326 S.C. 369, 482 S.E.2d 792 (1997); *Moshtaghi, supra; Miller v. Fairfield Communs., Inc.*, 299 S.C. 23, 382 S.E.2d 16 (1989), *cert. dismissed*, 302 S.C. 518, 397 S.E.2d 377 (1990); *Jones v. Gilstrap*, 288 S.C. 525, 343 S.E.2d 646 (1986).

**9.** *Moshtaghi* is not to the contrary. In that case, the plaintiff was employed under an employment contract similar to the agreements here (agreements for at-will employment with a notice provision). The court of appeals, in affirming a summary judgment, rejected the *Ludwick* claim on the merits because there was no evidence to support the plaintiff's wrongful discharge claim. 443 S.E.2d at 919. Thus, the court of appeals did not address this issue. Under South Carolina law, " 'a case cannot be considered as a binding precedent on a legal point that was not argued in the case and not mentioned in the opinion.' " *Hutto v. Southern Farm Bur. Life Ins. Co.*, 259 S.C. 170, 191 S.E.2d 7, 8–9 (1972) (citation omitted).

**10.** In *Hines v. U.P.S.*, 736 F.Supp. 675 (D.S.C. 1990), the defendant contended that the *Ludwick* claim failed as a matter of law because, *inter alia*, the plaintiff was not an at-will employee. The issue was mooted because the plaintiff abandoned her *Ludwick* claim. 736 F.Supp. at 677.

Courts which have considered whether an employee with a fixed-term contract may maintain a wrongful discharge tort action are split. *Compare Cullen v. E.H. Friedrich Co.*, 910 F.Supp. 815, 821 (D.Mass.1995) (under Massachusetts law, "[t]he cause of action [for wrongful discharge in violation of public policy] is only available to 'at-will' employees"); *Luethans v. Washington Univ.*, 894 S.W.2d 169, 173 (Mo.1995) ("a wrongful discharge action is only available to an employee at will"); *Silva v. Albuquerque Ass. & Distrib. Freeport Ware. Corp.*, 106 N.M. 19, 738 P.2d 513, 515 (1987) ("Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable"); *Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36, 38 (1986) ("we hold that an action for the tort of wrongful discharge is available only when the employment relationship is at will"); *Hermreck v. U.P.S., Inc.*, 938 P.2d 863, 867 (Wyo.1997) ("Where an employment contract is present, there does not exist any necessity for invoking a separate action for the tort of retaliatory discharge as to vindicate public policy"); *with Retherford v. AT & T Comm. of Mt. States, Inc.*, 844 P.2d 949, 960 (Utah 1992) ("We hold that the tort of discharge in violation of public policy is a limitation on all discharges, not merely an exception to the at-will doctrine"); *Wilson v. City of Monroe*, 88 Wash.App. 113, 943 P.2d 1134, 1137 (1997) ("we reject the argument that the tort cause of action for wrongful discharge in contravention of public policy . . . applies only to at-will employees").

terest in its public policy by the prohibition of employment terminations which violate that policy. However, another purpose of *Ludwick* is to protect at-will employees, who ordinarily have no remedy available to them for a termination of their employment. Thus, *Ludwick* and its progeny expressly retain employment at-will as the law of the state, while also providing a measure of protection for an at-will employee by limiting the employer's otherwise virtually unfettered power to terminate in one instance: *i.e.*, where the termination violates public policy.

While both of these policies are undoubtedly important, two opinions of the state supreme court—*Dockins* and *Epps*—appear to elevate the importance of the protection of at-will employees over the state's interest in vindicating its public policy since the supreme court in those cases refused to allow a *Ludwick* claim to be maintained where the employee had another remedy available to him.[11] These cases suggest that *Ludwick* is not a general tort remedy for all employees but, instead, is a remedy created to protect at-will employees where no other remedy exists.

Because an employment contract with a notice provision is a contract for a stated term, *Shivers*, 423 S.E.2d at 107,[12] an employee who is employed under a contract for a stated term is in a much different position than an at-will employee. As noted, where the employment contract is for a stated term, the employee has "continual right" to employment until the expiration of the stated term unless the employer has just cause to terminate the contract at an earlier time.

Unlike an at-will employee, the fixed-term employee has thus bargained for, and enjoys, protection from *immediate* termination of his employment for "any reason." Moreover, in the event that the employer attempts to terminate the contract for a stated term early based on just cause, the employee has the opportunity to challenge whether just cause existed in a breach of contract lawsuit. *See Martin v. Southern Ry. Co.*, 240 S.C. 460, 126 S.E.2d 365, 369 (1962) (employee is entitled to have jury decide issue of cause for termination where evidence is in dispute). If a factfinder determines that the employer did not have just cause to terminate the employment contract, then the employer is liable to the employee for damages in an amount to compensate for the unfulfilled term of the contract.[13]

As the foregoing illustrates, disallowing an employee contracted for a stated term to pursue a *Ludwick* claim does not necessarily contravene the intent behind that opinion because the employee is protected from an immediate discharge for any reason other than for cause, and the "for cause" requirement negates for all practical purposes the possibility that a termination in violation of public policy would be allowed to stand.[14] The Court recognizes, however, that in a case such as this one, where the employment contract is for employment at will with a notice provision, the possibility that a public policy violation may go unchecked does exist. For example, an employer may decide to trigger the notice provision "at will" by relying on a reason which is violative of public policy. Once the employer gives the employee his

---

**11.** *See Dockins*, 413 S.E.2d at 18–19 (limiting employee to remedy under Fair Labor Standards Act); *Epps*, 405 S.E.2d at 387 (limiting employee to remedy under 42 U.S.C. § 1983).

**12.** *See also Young*, 333 S.E.2d at 568 (a contract with a notice provision "'is virtually indistinguishable from that under a contract for a definite term. The only difference is that the contract [with a notice provision] does not have a definite termination date'").

**13.** It seems unlikely that an employment termination which would be violative of the state's public policy could have been made for just cause. *See Vaught v. Waites*, 300 S.C. 201, 387 S.E.2d 91, 93–94 (1989) ("'Just cause' generally connotes a cause which is related to the employ-

ee's performance of his work duties, and should be based on some incapacity which renders the employee unfit for further service" (citations omitted)); *cf.* S.C.Code Ann. § 59–25–160 (defining "just cause" for purposes of revocation or suspension of teachers' certificates); *Mickens v. Southland Exch.–Joint Venture*, 305 S.C. 127, 406 S.E.2d 363, 365 (1991) ("discharge for cause" under the state unemployment law includes a discharge for "'the disregard of behavior which an employer can rightfully expect from an employee'" (citation omitted)).

**14.** Of course, the remedy available to the contract employee would differ because a *Ludwick* cause of action is a tort, *Culler*, 422 S.E.2d at 93, for which the employee presumably may recover punitive damages.

notice, the contract then becomes one for a definite term. In that instance, the employer incurs no liability if it allows the notice provision to expire.

### III. CONCLUSION

"Certification respects and promotes the core principles of judicial federalism," and it is particularly "appropriate where the certified question implicates a state's important public policy concerns." *Shirley v. Russell,* 69 F.3d 839, 844 (7th Cir.1995). "The decision to certify a question of law to the highest court of the state is within the discretion of the Court, and it may be made *sua sponte.*" *Brunty v. NationsBanc Mtg. Corp.,* 955 F.Supp. 47, 48 n. 3 (D.S.C.1997) (citations omitted). Because the question addressed herein involves an important matter of state public policy and falls within the scope of S.C.A.C.R. 228, the Court *sua sponte* concludes that certification is appropriate in this case.

In light of the foregoing, the undersigned judge respectfully **CERTIFIES** pursuant to S.C.A.C.R. 228 the question of law set forth above. The Court **DIRECTS** the Clerk of Court to forward this Order (bearing this Court's seal) to the Supreme Court of South Carolina and to provide all materials and assistance which that court may request. The Court will hold this action in abeyance pending resolution of the certified question.